IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| BONNIE OTTO,<br><br>    Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | 4:16-CV-00461-RGE-CFB<br><br><br><br>REPORT AND RECOMMENDATION |

      Plaintiff Bonnie Otto moves for reversal of Defendant Social Security Commissioner's decision denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act") and supplemental security income payments ("SSI") under Title XVI of the Act. 42 U.S.C. § 401–434, 1381–1385. Alternatively, Otto moves for remand to the Commissioner with instructions to appropriately weigh the evidence in the record. The Commissioner asserts that the Court should affirm the denial of benefits, as the decision is supported by substantial evidence in the record as a whole. This Court reviews the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

      Otto complains that the Administrative Law Judge's ("ALJ") decision is not supported by substantial evidence because the ALJ's determination of Otto's residual functional capacity ("RFC") did not take into account Otto's alleged inability to stand or walk for six hours out of an eight-hour day, or her inability to lift 20 pounds for one-third of a workday, and her need to use a cane. After the ALJ's ruling was filed, Otto supplemented the record with her most recent medical records and another report expanding her treating physician Dr. Bollin's previous opinions. Otto argues that the Appeals Council should have given controlling weight to the opinion of Dr. Bollin. Dr. Bollin's opinion conflicts with the ALJ's determination that Otto has the RFC to perform light work and her past job as a security guard. Dr. Bollin opined that Otto had very limited abilities to stand and walk, and could lift no more than five pounds. Based on Dr. Bollin's opinions, Otto argues that she is capable of only sedentary work. Otto asserts that,

1

given a sedentary RFC, her age at the onset of her alleged disability, and her nontransferable skills, Rule 201.14 of the Medical-Vocational Guidelines requires a finding that she is disabled.

## I. PROCEDURAL HISTORY

Otto filed a Title II application for DIB and a Title XVI application for SSI on July 31, 2013, alleging a disability onset date of March 1, 2008, due to diabetes, celiac disease, breast cancer, and arthritis in her back (Tr. 220–31). These claims were denied on November 6, 2013 (Tr. 83–104), and again upon reconsideration on December 26, 2013 (Tr. 105–30). Otto timely requested and received a hearing before ALJ Eric S. Basse on April 23, 2015 (Tr. 19). At the hearing, Otto testified, as did Vocational Expert ("VE") Roger Marquardt. The ALJ found that Otto was capable of returning to past relevant work and was not disabled at any time between March 1, 2013, the alleged onset date, and June 25, 2015, the date of the ALJ's unfavorable decision (Tr. 16, 34). Otto sought review before the Appeals Council, and submitted additional medical records and opinion evidence from her treating physician, Dr. Bollin, for the Council's consideration.

The Commissioner's decision became final on June 23, 2016, when the Appeals Council denied Otto's request for review of the ALJ's decision (Tr. 1). Otto filed a timely Complaint in this case to appeal the denial of benefits (ECF 1). On November 21, 2016, this case was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (ECF 8).

## II. FACTS AND ALJ DECISION

Otto must have been disabled to qualify for benefits under the Act. The Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

The ALJ used a five-step sequential evaluation to determine that Otto was not disabled within the meaning of the Act.[1] On June 25, 2015, the ALJ issued a decision denying Otto's

---

[1] 20 C.F.R. § 404.1520(a)(4) (2014) provides:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

claims for DIB under Title II and SSI under Title XVI of the Act. The ALJ made the following findings:

- Otto meets the insured status requirements of the Social Security Act through June 30, 2016.
- She has not engaged in substantial gainful activity since March 1, 2008, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq.*).
- She has the following severe impairments: degenerative disc disease; diabetes mellitus; status post breast cancer with right mastectomy; and mild obesity. (20 C.F.R. §§ 404.1520(c), 416.920(c)).
- She does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).
- She has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) involving occasionally climbing, balancing, stooping, kneeling, crouching and crawling.

---

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of [subpart P of part 404 of this chapter] and meets the duration requirement, we will find that you are disabled. . . .
(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

3

- Otto is capable of performing past relevant work as a security guard. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. §§ 404.1565, 416.965).
- Otto has not been under a disability, as defined in the Act, from March 1, 2008, through the date of the ALJ's decision (20 C.F.R. §§ 404.1520(f), 416.920(f)).

(Tr. 21–34).

The ALJ also found that Otto's celiac disease was not severe because Otto did not allege any functional limitations due to the condition, nor did the medical record set forth any findings which would support any functional limitations (Tr. 22). The ALJ found that other impairments mentioned occasionally in the record were not severe, because they did not cause significant limitations in functioning or did not last for a continuous period of 12 months. *Id.* The ALJ considered the nonsevere impairments in determining Otto's RFC. *Id.* At the time of the hearing, Otto was taking Metformin, Tramodol, Lisinopril, Januvia, and Zetia (Tr. 388).

### A. Educational and Vocational Factors

Otto was born May 3, 1957, and was 57 years old at the time of the hearing in 2015 (Tr. 44). She is a high school graduate (Tr. 44). She has past relevant work as a security guard and a rewind operator, in which she was responsible for operating a rewind machine and lifting and replacing rolls of paper. She was terminated from her job as a security guard in 2008 because she was unable to walk as much as is necessary to perform the job (Tr. 48). In her Work History Report, submitted January 28, 2011, Otto described the security guard job as requiring her to walk inner and outer patrols and watch monitors, requiring that she walk, sit, stand, and climb in an eight-hour shift (Tr. 289). She noted that this job did not require that she stoop, kneel, crouch, crawl, handle or grasp big objects, reach, write, type, or handle small objects. She stated that no lifting or carrying was required.

### B. Medical Evidence

On October 28, 2010, Otto visited House of Mercy Medical Clinic, complaining of left leg pain and lower back pain that radiated to her hip (Tr. 402).

On April 25, 2011, Otto visited Broadlawns Medical Center, where she was seen by Cynthia Peterson, nurse practitioner, for diabetes mellitus and leg pain (Tr. 532). She reported muscle aches in her thighs. The nurse practitioner noted her slightly antalgic gait (limping to avoid pain), and provided her with a cane to help her walk.

On May 5, 2011, Otto underwent a consultative evaluation by David M. Hall, D.O., internal medicine physician (Tr. 492–99). Otto alleged that she was disabled, due to her diabetes mellitus, adult celiac disease, and leg pain. At that time, she was taking Metformin, Lisinopril, aspirin, Ezetimibe, multivitamins, and Vitamin D3. She volunteered at a thrift store, where she sat and folded clothes. She reported that she used a cane to help her walk, and could not even walk one block due to her severe leg pain. She stated that she could carry a small grocery bag, and could possibly lift up to four pounds. She said she could drive at least five miles per day. Her physician had not assigned her any physical restrictions (Tr. 497).

The physical examination by Dr. Hall revealed that Otto was 5'4" and 225 pounds, and had a Body Mass Index of 37 (Tr. 497). Deep tendon reflexes in her biceps, triceps, and brachioradialis were normal (2+/4). Deep tendon reflexes in her lower extremities were diminished (1+/4). Otto exhibited poor proprioception (i.e., the sense of the movement, strength, and relative position of one's body parts). Her legs showed muscle wasting and muscle weakness. With some difficulty, Otto was able to walk heel-to-toe, but was not able to squat. Her straight leg raising test was positive bilaterally for both legs. She experienced some leg and back pain during the range of motion testing. Otto was able to make fists easily; she could also extend her hands and oppose her fingers. Her grip strength in her hands were strong and equal.

Dr. Hall opined that Otto could frequently lift, push, pull, and carry from the floor to her waist and over her shoulder (Tr. 498). He further opined that she could occasionally lift, push, pull, and carry from the waist to the shoulder. *Id.* Dr. Hall did not give Otto any weight restrictions on lifting. *Id.*

Otto returned to Peterson on May 27, 2011, complaining of her leg pain. Otto reported that she experienced pain in both legs when walking, and especially when using the stairs (Tr. 529). She used a cane for walking, and experienced pain when extending her left leg. Otto underwent electromyography and ankle-brachial index testing, which were within normal limits. Otto was seen again by Peterson in October of 2011, complaining of leg weakness after walking 15 steps (Tr. 524). On exam, she appeared well. On October 28, 2011, x-rays were taken on Otto's lumbosacral spine, which revealed degenerative irregularities with spurs at several levels and some slight narrowing in disc space. When Otto returned to Peterson on November 29, 2011, she had a slightly antalgic gait and used a cane for walking (Tr. 521). Peterson discussed physical therapy and exercise with Otto and adjusted Otto's medications.

5

Otto began seeing Krista Barnes, a Physician's Assistant at Broadlawns Medical Center, on May 24, 2012 (Tr. 515). Otto complained of uncontrolled diabetes mellitus, bilateral leg pain, and a chest flutter, but said that she walked daily. Barnes performed a physical examination; she reported that Otto appeared well and was not in acute distress. A peripheral vascular exam was normal and her neurological exam was within normal limits (Tr. 517).

In October 2012, Otto visited the Podiatry Clinic at Broadlawns on account of her toenail fungus. Upon examination, she had full, pain-free range of motion to all essential joints. She began taking Lamisil for her foot fungus (Tr. 508).

Barnes saw Otto in July 2013 (Tr. 586). She appeared well and was not in acute distress, and did not complain of pain or other acute symptoms. Otto reported that she ran her own daycare and did cleaning work. Her neurological exam was normal. Barnes prescribed Lantus and referred Otto for diabetic education. Otto returned to Barnes in August 2013, complaining of a feeling of "pins and needles" in her arms and legs, which had gradually worsened over the prior two weeks (Tr. 581). Barnes prescribed Gabapentin, and instructed her to return in six to eight weeks.

Otto was also seen at Broadlawns in July 2013 for a mammogram (Tr. 591). The mammogram showed indeterminate findings. A bilateral breast exam was performed, followed by bilateral breast biopsies and bilateral mammograms. The pathology of the right breast biopsy revealed high grade in situ ductal carcinoma. The pathology of the left breast biopsy showed fibrocystic changes. On August 20, 2013, Otto underwent an MRI of her breasts; this revealed a large lesion and an enlarged right axillary lymph node, and two lesions on her left breast (Tr. 556–57). Otto returned to Broadlawns on August 29, 2013, because of the size of the lesion (Tr. 576). A right breast mastectomy was scheduled for October 2013.

On September 3, 2013, Otto was seen by Dr. Majed Bazanji, M.D., a family practice physician, for a consultative examination (Tr. 558–65). She reported to Dr. Barazanji that she had experienced constant back pain for five years, without any history of injury or trauma. She reported that it intensified when she was standing, lifting, walking, or bending. She also reported that she had experienced pain and tingling in her legs for the last two years, describing the sensation of needles poking her legs and a dull ache. She informed Dr. Bazanji that she had adult-onset diabetes, and had been told that her leg pain was caused by peripheral neuropathy. Upon examination by Dr. Bazanji, Otto appeared healthy and was not in acute distress. There

was no tenderness or obvious swelling in her joints. Her range of motion was normal in all joints, but was somewhat reduced in her hip, lumbar, and cervical spines. Her straight leg raising test was normal in both legs. Her hands could be fully extended and her fingers opposed, and her grip was normal in both hands. No muscle weakness or sensory loss was detected on either side, and her reflexes were normal bilaterally. Dr. Bazanji noted that Otto's gait was normal; there was no mention of Otto using a cane to walk. Dr. Bazanji diagnosed Otto with lower back pain with bone spurring and degenerative disc disease, diabetes mellitus with peripheral neuropathy, right breast carcinoma and pending right mastectomy, hypertension, and celiac disease. Dr. Bazanji opined that Otto may have difficulty stooping, climbing, kneeling, and crawling, but that she had no limitation handling objects, seeing, hearing, speaking, traveling, or with work environments involving dust, fumes, temperatures, or other hazards. He further opined that Otto could stand for half an hour, walk up to two blocks, lift up to 15 pounds, and had no restrictions on sitting.

On September 23, 2013, Otto visited Dr. Bollin for a pre-operative physical examination (Tr. 571). The examination revealed that Otto weighed 208 pounds. Dr. Bollin renewed her prescriptions for Tramadol, Gabapentin, Lantus, Metformin, Lisinopril, Januvia, and Zetia (Tr. 571–72). On October 8, 2013, Otto visited Broadlawns, where she underwent a total right mastectomy with sentinel lymph node resection (Tr. 567). She tolerated pain medications and was able to walk in the hallways. She was instructed to do no heavy lifting with her right arm. On October 14, 2013, Otto returned for a follow-up appointment and was healing well. She returned weekly for additional follow-up appointments. She reported some lower back and shoulder pain, but denied joint pain or stiffness, and said she was healing well.

On November 21, 2013, Otto visited the University of Iowa Hospitals and Clinics Radiation Oncology Clinic to be evaluated for treatment recommendations (Tr. 626). She reported that she was recovering well from surgery, and denied any pain, shortness of breath, cough, weight loss, or bowel or bladder problems. She reported that she was able to carry out all of her activities of daily living. *Id.* A physical examination revealed that her extremities were normal and atraumatic, with no cyanosis or edema. Adjuvant radiation therapy was recommended.

Otto visited Dr. Bollin in January 2014, complaining of high blood sugar (Tr. 751). Upon examination, her motor strength in her legs was normal and equal, and her neurological exam

was normal. Otto was not in acute distress. She was tolerating radiation treatment well. She was taking Metformin, but was no longer on Januvia; Dr. Bollin prescribed her Glyburide.

On January 30, 2014, Otto returned to Broadlawns for a follow-up appointment regarding her breast cancer (Tr. 755). At that time, she was eight treatments into her radiation therapy (with 30 treatments remaining), and it was reported that it was going well. Otto denied arthralgias, myalgias, joint pain, stiffness, numbness, tingling, weakness, loss of balance, vertigo, seizures, confusion, and trouble sleeping. *Id.* She did not complain of any tumor issues. A physical examination revealed that she was doing well with treatment, without evidence of recurrent disease. *Id.*

Otto returned to Broadlawns in March 2014, for drainage at her mastectomy site. She was prescribed Silvadene. Otto visited Broadlawns again on April 3, 2014, for a follow-up appointment after completing radiation therapy (Tr. 734). She still suffered from chronic lower back pain, but had no acute complaints. There was no evidence of recurring breast cancer. On April 8, 2014, Otto returned to Broadlawns, complaining of lower left quadrant pain, which worsened with movement and position (Tr. 729). Otto did not complain of any musculoskeletal symptoms. Examination revealed her range of motion of extremities to be normal. By this time, her breast infection was resolving.

On May 23, 2014, Dr. Bollin conducted a complete physical exam on Otto (Tr. 734). Otto appeared well, was in no acute distress, and was well-nourished. X-rays revealed degenerative spur irregularities and some disc space narrowing. Otto reported that her back pain had increased over the prior two weeks, to the point that she had trouble lifting anything, and that she struggled to carry a two liter bottle of soda up the stairs. She denied chest pain, shortness of breath, diarrhea, constipation, focal weakness, and numbness. Dr. Bollin diagnosed her with celiac disease, morbid obesity, hyperlipidemia, diabetes mellitus type 2, hypertension, and lumbago.

On June 11, 2014, Otto visited Broadlawns to have the toenail removed from the big toe on her right foot (Tr. 714). She returned to Broadlawns on June 25, 2014, for a follow-up appointment following the toenail removal (Tr. 711). Her pedal pulses were palpable, and she had full muscle strength in her right foot.

On July 3, 2014, Otto returned to Dr. Bollin, complaining of high blood sugar (Tr. 702). Upon examination, she appeared well and was not in acute distress, and her neurological exam was normal. Dr. Bollin told her to watch her diet and monitor her sugars, and to return in three

months. Otto also had a follow-up appointment for her breast cancer on the same day (Tr. 706). She felt well, other than her chronic lower back pain, and there was no clinical evidence of recurrent disease.

In September 2014, Otto was seen for a hypoglycemic episode and small wound over her left Achilles tendon caused by her new shoes (Tr. 698). A physical examination showed her weight at 215 pounds. She was told what to do in the event of another hypoglycemic episode, and was instructed not to wear the shoes again.

On October 2, 2014, Otto returned to Broadlawns for a follow-up appointment regarding her breast cancer (Tr. 693). She reported that she felt well, except for occasional pains across her chest wall. She denied any musculoskeletal arthralgias, myalgias, joint pains, or stiffness. A physical examination showed that she weighed 220 pounds.

On December 2, 2014, Otto was seen by Marc Baumert, a Physician's Assistant, for a medication refill (Tr. 689). She complained of lower back pain and reported that she had been out of Tramadol for a month. She denied other symptoms and any recent falls or trauma.

On January, 8, 2015, Otto returned to Broadlawns for a follow-up appointment regarding her breast cancer (Tr. 679). She reported that she felt well, except for lower back pain exacerbated by cold weather. Otto's physical and mental status examinations were unremarkable. On February 3, 2015, Otto again visited Broadlawns; she had concerns regarding a new lump and a previous area of nodularity along her mastectomy scar line. She was referred to surgery to have them removed; an excisional biopsy was performed on February 11, 2015 (Tr. 659). When Otto was seen again on February 16, 2015, she had no new complaints (Tr. 655).

On February 27, 2015, Otto visited Dr. Bollin, complaining of high blood sugar (Tr. 651). She denied experiencing dizziness, falling, or trouble walking. Upon examination, Dr. Bollin found that she was obese, but in no acute distress, and her neurological evaluation was normal. Dr. Bollin renewed her prescription for Tramadol and increased the dose of Metformin.

On March 26, 2015, Otto was seen again by Dr. Bollin, complaining of lower back pain and diabetes mellitus, and needing a medication refill (Tr. 773). She reported that the pain did not radiate to her legs, but that she was unable to stand for long. She denied experiencing dizziness, trouble walking, or falling within the past six months. Her neurological examination was normal, and an examination of her musculoskeletal system found it to be atraumatic.

9

Dr. Bollin reported that Otto had full range of motion in her extremities. Dr. Bollin prescribed her Flexeril, and encouraged her to consider physical therapy for her back pain.

On April 9, 2015, Otto had a follow-up appointment at Broadlawns regarding her breast cancer (Tr. 768). Otto was doing well; she denied focal weakness, loss of balance, numbness, tingling, vertigo, and problems walking. A physical examination revealed her mastectomy scar to be intact. There was no evidence of recurring breast cancer.

On April 27, 2015, Otto visited Dr. Bollin at Broadlawns for her diabetes (Tr. 813). Otto reported that she had been checking sugars at home daily and taking medications as directed. Dr. Bollin noted that Otto did not exhibit hypoglycemia symptoms and had been tolerating the medications well. Otto also reported that she was experiencing chronic and continuous pain in her legs and back (Tr. 816). She denied having trouble walking, feeling dizzy when standing, and having fallen in the last six months.

On May 19, 2015, Otto visited Dr. Bollin at Broadlawns for a cough and fever (Tr. 809). Dr. Bollin prescribed Otto albuterol sulfate and Claritin, and renewed her prescription for Benzonatate. A physical examination revealed that Otto weighed 212 pounds. Otto reported that she had chronic aching pain in her legs and back. She reported that she felt dizzy when standing, had trouble walking, and had fallen while going up the stairs in the last six months (Tr. 812).

On May 22, 2015, Otto again visited Dr. Bollin at Broadlawns, for a follow-up appointment regarding her cough (Tr. 805). Otto reported that she had a dry cough, and was unable to lay flat. Otto also reported that she had a continuous, aching pain in her back, and that she had been experiencing chronic pain in her legs and back. She denied having trouble walking, feeling dizzy when standing, and having fallen within the last six months.

On July 9, 2015, Otto visited Dr. Bradley Lair at Broadlawns for a follow-up appointment regarding her mastectomy (Tr. 799). Otto was concerned about part of the scar and had questions about her need for a six-month mammogram, but was not having any issues. Otto denied having chest pain or experiencing lightheadedness; she also denied experiencing arthralgia, joint pain, joint stiffness, or myalgia. Following a physical examination, Dr. Lair reported that Otto appeared well and was in no acute distress. He found no abnormalities or evidence of recurrent disease. Otto reported that she was still experiencing chronic pain in her back and legs, and that she had fallen the prior day (Tr. 803).

On July 28, 2015, Otto was seen by Dr. Bollin at Broadlawns for a follow-up appointment regarding her mastectomy (Tr. 795). She continued to have pain in her right upper quadrant, but denied experiencing jaundice, abdominal pain, and weight loss. Otto reported that she was generally feeling well, but was experiencing pain in her lower back that was made worse with standing and walking. She reported that she had to sit after standing for only 10 minutes because of the pain. Following a physical examination, Dr. Bollin reported that Otto was obese, but not in any acute distress. Dr. Bollin completed a form for Otto's attorney. Otto denied feeling dizzy when standing, having trouble walking, and having fallen in the last six months.

On August 26, 2015, Otto visited Dr. Bollin at Broadlawns for a wellness physical examination (Tr. 790). Otto reported that she was feeling well, and denied experiencing shortness of breath, nausea, vomiting, focal weakness, vision changes, diarrhea, constipation, melena, and hematochezia. She weighed 214 pounds. Following a physical examination, Dr. Bollin reported that Otto appeared well and was not in any apparent distress. Otto reported that she was not currently in pain, but that she had been experiencing chronic pain in her legs and back. She denied having trouble walking, feeling dizzy when standing, and having fallen in the last six months.

On September 2, 2015, Otto saw Dr. Bollin at Broadlawns, complaining of pain in her right chest wall (Tr. 786). She reported that the site of the mastectomy was tender, and that she was being woken up by intense, shooting pain. Dr. Bollin performed an examination, and reported that the mastectomy site was well-healed, and the skin was intact without any rash. She noted that the skin was tender to palpation and there were no seromas or other masses detected. Otto denied having trouble walking, feeling dizzy when standing, and having fallen in the last six months.

On September 11, 2015, Otto was seen by a nurse practitioner at Broadlawns for a follow-up appointment for her breast cancer, complaining of reddened, tender, hard areas under her arms (Tr. 781). Upon examination, the nurse practitioner found that the tender areas were infected hair follicles, unrelated to Otto's breast cancer or mastectomy. The nurse practitioner instructed Otto to change her bath sponge monthly and to use warm compresses on the infected follicles, and gave her a prescription for Bactroban. Otto reported that she had problems walking and uses a cane, and that she had fallen in the last six months.

### C. Hearing Testimony

At the hearing, Otto testified about her symptoms and limitations. She stated that she has pain and numbness in her legs due to her diabetes mellitus, and trouble walking caused by pain and fatigue from her medications (Tr. 51–52). Otto testified that she uses a cane to help her walk (Tr. 73, 78), although she did not bring it to the hearing (Tr. 33). She also stated that she has pain and numbness in her hands and fingers, and she is unable to form a fist or pick things up 10–12 days per month. She testified that her hands hurt if she touches anything (Tr. 33).

Otto testified that she struggles with the activities of daily living. Her husband does most of the cooking and the laundry (Tr. 61), because she is unable to lift the pans and laundry (Tr. 67). She testified that she does not vacuum because of her back pain (Tr. 68), she no longer cleans the ceiling fans (Tr. 68), and she has stopped walking her dog because she fears falling (Tr. 61). Otto testified that sitting in the car is painful for her (Tr. 68), and her sister helps her with grocery shopping and errands (Tr. 61). She stated that her medication makes her tired (Tr. 64), and the pain often causes her to stay in bed all day (Tr. 69). Otto testified that she no longer engages in her hobbies, including puzzle books, latch hook rugs, and playing with her grandkids, due to the pain (Tr. 70).

The VE prepared a past work summary and testified at the hearing (Tr. 71). The VE testified that a hypothetical individual of Otto's age, education, and past relevant work, and with an RFC of light work—classified as lower-level, semi-skilled work—would be capable of performing the past relevant job of security guard (Tr. 75). The VE also testified that the same hypothetical person who instead had an RFC of sedentary work would not be able to perform past work (Tr. 75–76). The VE stated that Otto has no transferable skills from any of her past jobs to sedentary work (Tr. 76).

### D. Evidence Submitted to Appeals Council

On July 28, 2015, Dr. Bollin supplemented her medical opinion regarding Otto's limitations (Tr. 780). On this one-page questionnaire, she provided the following conclusions, based upon the doctor's treatment of Otto starting September 2013. The doctor did not refer to any specific examination or tests performed on Otto as the basis for these conclusions:

- Otto can only stand for a few minutes at a time before developing low back pain severe enough to require her to sit.
- Otto has a five-pound lifting restriction following her right mastectomy.

- If a job required her to stand for six hours of an eight-hour workday, or lift 20 pounds up to one-third of an eight-hour workday, Otto would need to take extra unscheduled 10–15 minute breaks, although that would not fully alleviate her pain.
- Otto uses her cane daily.

(Tr. 780). Otto also submitted medical records from Broadlawns from April 27, 2015, to September 11, 2015 (Tr. 5). The Appeals Council considered this information in its decision.

### III. STANDARD OF REVIEW

The Court will uphold an ALJ's decision if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but is enough that "a reasonable mind would find [it] adequate to support the Commissioner's conclusion." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015) (quoting *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971) (reasoning that substantial evidence means "more than a mere scintilla"). The Court considers evidence that both supports and detracts from the ALJ's decision. *Moore v. Astrue*, 623 F.3d 599, 605 (8th Cir. 2010). If substantial evidence supports the ALJ's decision, the Court will not reverse merely because substantial evidence exists in the record that would support a contrary outcome, or because the Court would have determined the case differently. *Myers v. Colvin*, 721 F.3d 521, 524 (8th Cir. 2013) (citing *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007)). The ALJ's decision must have been outside the available "zone of choice" for it to warrant reversal. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (citing *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). That a reviewing court may have reached a different decision is not grounds for reversal so long as substantial evidence supports the ALJ's decision. *Id.*

The Court also reviews the Commissioner's decision to determine if there was a procedural error, an erroneous legal standard, or an incorrect application of the law. *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011). Issues of law are reviewed *de novo*, with deference accorded to the Commission's construction of the Social Security Act. *Petersen v. Astrue*, 633 F.3d 633, 636 (8th Cir. 2011) (citing *Smith v. Sullivan*, 982 F.2d 308, 311 (8th Cir. 1992)).

To establish entitlement to benefits, a claimant must show he or she is unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted, or can be expected to last, for a continuous period of at least 12 months. 42 U.S.C.

13

§§ 423(d), 1382c(a)(3)(A). The claimant bears the burden of persuasion in proving the RFC. *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (citing *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010)).

## IV. DISCUSSION

The ALJ's decision followed the five-step sequential evaluation set forth in the Social Security regulations. *See* 20 C.F.R. §§ 404.1520, 416.920. The parties do not dispute the ALJ's findings in the first three steps of the analysis. In the fourth step, the ALJ found that Otto was not disabled because she had an RFC of light work, and that Otto was capable of returning to her past relevant work as a security guard. Otto disputes this finding, asserting that it is not supported by substantial evidence. Otto argues that the July 2015 opinion of Dr. Bollin, which she submitted to the Appeals Council following the ALJ's unfavorable decision, should be given controlling weight, because it is a medical opinion offered by a treating source. Dr. Bollin opined that Otto's physical restrictions were greater than those available within the ALJ's RFC classification of light work. Otto argues that, based on Dr. Bollin's medical opinion, substantial evidence in the record would only support a finding that she had an RFC of sedentary work. Otto asserts that, given a sedentary RFC, her age at the onset of her alleged disability, and her lack of transferable skills, Rule 201.14 of the Medical-Vocational Guidelines ("Grid Rule 201.14") requires a finding that she is disabled. Otto requests that the case be reversed and remanded with instructions to award benefits, or at a minimum, be remanded for further findings.

**A. The Appeals Council Properly Considered Otto's Additional Evidence.**

Following the ALJ's unfavorable decision, Otto appealed her case to the Appeals Council, and included new evidence not in the record before the ALJ: a one-page opinion by Dr. Bollin, dated July 28, 2015, and medical records from Broadlawns from April 27, 2015, to September 11, 2015 (Tr. 5).

If the Appeals Council has considered newly submitted evidence, the Court does not reconsider the Appeals Council's decision to deny review. *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994). Instead, the Court considers whether the ALJ's decision is supported by substantial evidence in the record, including the newly submitted evidence. *Id.* The Court finds that Appeals Council properly considered the new evidence Otto presented. The issue is whether substantial evidence in the record, including the new evidence, supports the ALJ's determination.

14

## B. The ALJ's Finding That Otto Had the Residual Functional Capacity to Perform Past Relevant Work as a Security Guard Is Supported by Substantial Evidence.

The ALJ determined that Otto had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b); this classification is for work involving occasional climbing, balancing, stooping, kneeling, crouching, and crawling. In determining a claimant's RFC, the ALJ should consider "all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Moore*, 572 F.3d at 523 (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006)). Although it is the ALJ, not a physician, who determines a claimant's RFC, that determination is a medical question and must be supported by medical evidence. *Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004).

In her testimony at the hearing, Otto complained of a range of symptoms. She alleged that her back and legs hurt all the time, and as a result she had difficulty walking; she testified that she fell often and had to use a cane for ambulation (Tr. 62–63). She also alleged that she could not even lift five pounds, and that her hands hurt, burned, and swelled so much that somedays she could not form a fist (Tr. 53, 65–66). In the Work History Report, Form SSA-3369, Otto described her work as a security guard as not requiring that she lift objects of any weight, handle objects, grasp, stoop, kneel, crouch, or crawl (Tr. 289).

Although an ALJ may not discount a claimant's allegations simply because they are not fully supported by the record, an "ALJ may disbelieve subjective complaints if there are inconsistencies in the evidence as a whole." *Goff v. Barnhart*, 421 F.3d 785, 789 (8th 2005). The ALJ did not find Otto's testimony regarding the severity of her symptoms to be credible. The ALJ stated that Otto "experiences some symptoms and limitations; however, . . . [t]he record includes evidence strongly suggesting that the claimant has exaggerated symptoms and limitations." (Tr. 33).

Otto disputes that there is substantial evidence supporting the ALJ's RFC determination. She argues that it is not supported by findings and opinions of several practitioners who treated or evaluated her; the ALJ considered all of these opinions in reaching his determination that she was not disabled. Otto points to the following opinions in support of her argument:

1) During a 2011 consultative evaluation by Dr. David Hall, he found that Otto had reduced strength in her legs, poor proprioception, difficulty with heel-to-toe walking, and that her legs showed muscle weakness and muscle wasting, with "significantly

diminished" sensation in her legs, and her deep tendon reflexes in her legs were 1+/4 in the patellar and ankle jerk reflexes (Tr. 492–99). However, Dr. Hall also found that she did not have any restrictions on lifting and found that she could lift, push, pull and carry (Tr. 498). The ALJ did not give Dr. Hall's opinion great weight, because it was not consistent with the medical evidence in the record (Tr. 26);

2) May 27, 2011, Peterson, a treating nurse practitioner, noted that Otto had a slightly antalgic gait and prescribed her a cane to assist her ambulation (Tr. 529). Peterson also noted that walking exacerbated Otto's leg pain;

3) A September 2013 consultative examination by Dr. Barazanji, who found that Otto might have problems stooping, climbing, kneeling, or crawling, but that she could stand for 30 minutes, walk up to two blocks, and could lift 10–15 pounds (Tr. 558–65). The ALJ did not give Dr. Barazanji's opinion great weight because it was internally consistent (Tr. 28); and

4) Dr. Bollin, Otto's treating physician, noted her reduced functional capabilities in her supplemental report of July 2015 (Tr. 780).

Substantial medical evidence in the record supports the ALJ's finding of an RFC for Otto of at least light work. Notes from physical evaluations and physicians' opinions on many occasions over the course of Otto's alleged disability reveal that she was capable of at least minimal physical activity, including walking, standing, and lifting. The following are some of the medical reports that support the ALJ's determination and conflict with Otto's testimony at the hearing.

On September 3, 2013, Otto underwent a consultative evaluation by Dr. Majed Barazanji, M.D., a family practice physician (Tr. 558–65). Dr. Barazanji noted that Otto's gait was normal, and did not make any reference to her use of a cane. Upon examination, the doctor reported that Otto appeared healthy and was in no acute distress. He found that her straight leg raise test was normal bilaterally, and that she could fully extend her hands, her fingers could be opposed, and her handgrips were normal. Dr. Barazanji found that Otto's range of motion was normal in joints, and it was slightly reduced in Otto's hip, lumbar, and cervical spine. The ALJ did not accord Dr. Barazanji's opinion great weight because it contained inconsistencies; Dr. Barazanji opined that Otto was capable of light work, although the notes from his physical examination of Otto reveal that Otto was not so restricted (Tr. 28).

16

On May 24, 2012, Otto was seen by Krista Barnes, a Physician's Assistant at Broadlawns Medical Center, for uncontrolled diabetes mellitus, leg pain, and a chest flutter (Tr. 521). Otto reported that she walked daily, and upon examination, Barnes noted that Otto appeared well, and was not in acute distress. Upon returning for another appointment with Barnes in July 2013, Otto had no complaints of pain or other acute syndromes, and appeared not to be in acute distress (Tr. 586). When Otto was seen at Broadlawns on April 8, 2014, she reported no musculoskeletal symptoms, and had full range of motion upon examination (Tr. 729).

In July 2014, Dr. Bollin noted that Otto appeared well and was in no acute distress when she saw Otto. When she saw Otto again on February 27, 2015, for uncontrolled diabetes mellitus, Otto denied dizziness, falling episodes, or problems walking. At this physical examination, Dr. Bollin found Otto was not in acute distress; she was obese, and her neurologic evaluation was within normal limits. Otto returned to Dr. Bollin on March 26, 2015, for back pain, diabetes mellitus, and a refill of her medication. At this appointment, she denied experiencing dizziness, problems walking, or falling in the last six months. Otto had full range of motion, and an examination of her musculoskeletal system showed it to be atraumatic.

The evidence Otto cites does not refute the substantial evidence supporting the ALJ's determination. The Court will not reverse an ALJ's decision simply because there is evidence supporting the opposite conclusion. *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009). "If, after viewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision. *Goff*, 421 F.3d at 789. Despite the evidence inconsistent with the ALJ's RFC determination, the Court finds that there is still substantial evidence in the record as a whole supporting the determination that Otto is not disabled.

### C. Dr. Bollin's Opinion Should Not Be Given Controlling Weight Because It Is Inconsistent with Other Substantial Evidence in the Record.

Otto argues that Dr. Bollin's supplemental opinion, which Otto submitted to the Appeals Council following the unfavorable decision by the ALJ, must be given controlling weight because Dr. Bollin is a treating physician, and her opinion is consistent with substantial evidence on the record. Otto argues that if Dr. Bollin's opinion is given controlling weight, then her RFC would be reduced to sedentary work, and she would be entitled to benefits.

A treating physician's opinion is given "controlling weight" if: 1) it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and 2) it is not inconsistent

with the other substantial evidence. *Goff*, 421 F.3d at 790. A treating physician's opinion does not automatically control, since the ALJ must evaluate the record as a whole. *Id.*

Dr. Bollin's supplemental opinion conflicts with substantial evidence in the record showing that Otto is capable of walking and standing, and does not have a five-pound weight limit on lifting. The examinations of Otto and opinions of those who treated her throughout 2014 and 2015 are consistent with the ALJ's findings that Otto has the ability to perform light work without significant restrictions. Dr. Bollin's opinion even conflicts with her notes from her previous examinations of Otto, in which Otto denies having difficulties walking and no mention is made of a weight restriction on lifting, or problems standing for extended periods of time. Because Dr. Bollin's supplemental opinion is inconsistent with other substantial evidence in the record, the ALJ did not err in failing to give it controlling weight.

**D. Rule 201.14 of the Medical-Vocational Guidelines Does Not Require a Finding That Otto Is Disabled Because Substantial Evidence Supports an RFC of Light Work.**

Otto argues that Grid Rule 201.14 applies because she should have at most a sedentary RFC, she was 51 at the onset of the alleged disability, and she has no skills transferable to a sedentary job; these factors compel a finding that she is disabled.

Grid Rule 201.14 states that when a claimant: 1) is age 50 to 54; 2) has at least a high school education, but does not provide for direct entry into skilled work; 3) is skilled or semiskilled, but whose skills are not transferrable; and 4) has an RFC of only sedentary work, then the ALJ must find that she is disabled. 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.14.

Substantial evidence in the record as a whole, including all of the medical reports from consultants and her treating physicians, supports the ALJ's conclusion that Otto has an RFC of light work. Because Otto is not limited to sedentary work, Grid Rule 201.14 does not apply, and a finding of disability is not required.

**V. CONCLUSION**

The ALJ did not err in denying Otto disability insurance benefits or supplemental security income payments. The ALJ's findings and conclusion were supported by substantial evidence in the record. Viewing the record as a whole, and considering evidence that both supports and detracts from the ALJ's decision, the Court finds that there is substantial evidence to support the ALJ's findings and conclusions. The ALJ's decision to deny Otto benefits should be affirmed. Otto's request that the Court order benefits to be awarded, or that the case be remanded for further findings should be denied.

## VI. REPORT AND RECOMMENDATION AND ORDER

IT IS RESPECTFULLY RECOMMENDED that the Commissioner's decision to deny Otto disability insurance benefits and supplemental security income payments be affirmed.

IT IS ORDERED that the parties have until August 29, 2017, to file written objections to the Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(C). Any objections filed must identify the specific portions of the Report and Recommendation and relevant portions of the record to which the objections are made and must set forth the basis for such objections. *See* Fed. R. Civ. P. 72; *see also St. Jude Med. S.C., Inc. v. Tormey*, 779 F.3d 894, 902 (8th Cir. 2015) (citing *McDonald v. City of St. Paul*, 679 F.3d 698, 709 (8th Cir. 2012)). Failure to timely file objections may constitute a waiver of Plaintiff's right to appeal questions of fact. *United States v. Kelley*, 774 F.3d 434, 439 (8th Cir. 2014) (citing *Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

Dated this 15th day of August, 2017.

*[signature]*

**CELESTE F. BREMER**
**UNITED STATES MAGISTRATE JUDGE**